UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

DALE SHELDON, III,                )
                                  )
        Plaintiff                 )
                                  )
v.                                )   No. 2:13-cv-315-DBH
                                  )
CAROLYN W. COLVIN,                )
Acting Commissioner of Social Security, )
                                  )
        Defendant                 )

## REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks reversal and remand, arguing that the administrative law judge erred in relying on the testimony of psychologist Charles O. Tingley, Jr., Ph.D., which she misconstrued as supporting her residual functional capacity ("RFC") finding, and the RFC opinions of nonexamining agency consultants Lewis F. Lester, Ph.D., and Brian Stahl, Ph.D., which are unsupported by other evidence of record, failing to adopt the RFC established by treating counselor Armand Madore, LCPC, examining agency consultants Edward Quinn, Ph.D., and Roger S. Zimmerman, Ph.D., and school psychological service provider Eleanore L. Houghton, M.S. Ed. NCSP, and neglecting to address Houghton's evaluation and opinions. *See* Plaintiff's Statement of Errors ("Statement of Errors")

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on June 13, 2014, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

(ECF No. 18) at 8-16. I find no reversible error and, accordingly, recommend that the court affirm the decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through March 31, 2011, Finding 1, Record at 16; that he had severe impairments of cognitive impairment with borderline intellectual functioning and learning disability and personality disorder, Finding 3, *id*. at 17; that he retained the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations: he could understand, remember, and carry out simple, repetitive instructions and persist at that level for eight hours a day, five days a week on a consistent basis, he would need to avoid work with the general public but could interact appropriately with co-workers and supervisors on the job, and he could adapt to routine changes in the work setting, Finding 5, *id*. at 19; considering his age (22 years old, defined as a younger individual, on his alleged disability onset date, November 10, 2010), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 7-10, *id*. at 23; and that he, therefore, was not disabled from November 10, 2010, through the date of the decision, June 12, 2012, Finding 11, *id*. at 24. The Appeals Council declined to review the decision, *id*. at 1-4, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary

*of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen*, 482 U.S. at 146 n.5; *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

### A. Testimony of Dr. Tingley

The administrative law judge stated that, in determining the plaintiff's RFC, she gave great weight to the opinions of Drs. Tingley, Lester, and Stahl. *See* Record at 22. The plaintiff argues that her reliance on Dr. Tingley was misplaced in that his testimony, as clarified on cross-examination, did not support her findings that he was capable of interacting appropriately with co-workers and supervisors and adapting to routine changes in the work setting. *See* Statement of Errors at 8. He points out that Dr. Tingley also testified that he (the plaintiff) was "close to" being able to obtain a job, seemingly indicating that, in Dr. Tingley's view, he was incapable as yet of sustaining full-time, competitive employment. *See id*. at 9-10.

As counsel for the commissioner acknowledged at oral argument, there are inconsistencies in Dr. Tingley's testimony.

Dr. Tingley testified, at the outset, that he agreed with Dr. Lester that the plaintiff's primary limitations were in understanding and carrying out detailed instructions and interacting with the public. *See* Record at 102. He stated that, in a normal work environment, the plaintiff probably would not have limitations in his ability to interact with co-workers and supervisors, noting that the plaintiff had described difficulty interacting with supervisors in a job in which "the bosses themselves escalated their behavior from his behavior level[,]" which "wouldn't be considered a normal work environment." *Id*. at 102-03. He added that the plaintiff seemed "to have made some progress in ability to control his anger, although [he was] still working on it[,]" and that he should be able to tolerate co-workers and supervisors "to a reasonable degree." *Id*. at 103.

On cross-examination, he agreed that (i) the plaintiff's work history included difficulty interacting with others, (ii) he was likely to have difficulty with stressors, although he was in clinical counseling for that issue, (iii) he had had issues in the workplace in the past with either emotional stability or handling stress, which, by his own testimony, had interfered with his ability to hold onto jobs, and, (iv) although it had been true in the past, as found by Dr. Zimmerman, that the plaintiff's major problem area was his ability to get along with others, particularly those in a position of authority, that was "less accurate now, because he's made progress in that area." *Id*. at 104-06.

Asked if it was a fair statement that treating counselor Madore did say at some times that the plaintiff had made progress, but that at other times he continued to have difficulties with anger and social interaction, Dr. Tingley responded: "Yeah. In the context of decreasing clinical counseling . . . and I thought that probably wasn't a good idea, to decrease it, since he was making progress." *Id*. at 106-07. He added: "[H]e's at a stage now where regular weekly counseling would be appropriate. And that hasn't been taking place[.]" *Id*. at 107.

4

He was then asked whether regular weekly counseling "would get [the plaintiff] to the point that he'd likely be able to not only get a job but sustain a job – hold on to a job?" *Id*. He responded: "Well, I think with regular weekly counseling and the starting of voc[ational] rehab[ilitation], he would be able to soon step off into a job." *Id*. He observed: "He has had a job that he has sustained, as the busboy, for over eight months." *Id*. Questioned as to whether, with regular weekly counseling and vocational assistance, the plaintiff could not only obtain a job but also sustain work, Dr. Tingley responded: "I think he's close to that now." *Id*. at 107-08.

The administrative law judge then asked, "But during the time period from what we're looking at here, which is November of 2010 through the present, in your opinion, has he been capable . . . of sustaining work within the functional limitations that you described?" *Id*. at 108. Dr. Tingley responded, "Yeah." *Id*. He explained:

> So there was a period that he was sustaining employment. But I think some of his stressors increased. He received counseling. He started to get better with some of that stuff. And then he decreased both because Mr. Mador[e] was out and because he didn't show up for appointments regularly. So, there might have been a period back then, in 2010, 2011, where he couldn't sustain that. But after – sometime in 2011, I thought he could.

*Id*. at 108-09.

The plaintiff argues that, rather than supporting the administrative law judge's RFC finding, "Dr. Tingley's testimony supports an RFC limiting the Plaintiff to working in jobs with only occasional or no stress, and in jobs in which he has no or extremely limited interaction with others, including co-workers and persons in positions of authority." Statement of Errors at 9. As the commissioner rejoins, *see* Defendant's Opposition to Plaintiff's Itemized Statement of Specific Errors ("Opposition") (ECF No. 22) at 4-5, that is too great a stretch.

Dr. Tingley's testimony, as a whole, indicates that he did not feel that the plaintiff possessed the ability to sustain remunerative employment (or the RFC that he endorsed at the

5

outset of his testimony) for at least some periods of time from November 10, 2010, through May 30, 2012, the date of the hearing. Nonetheless, that is not necessarily inconsistent with the administrative law judge's RFC finding. Dr. Tingley did not clarify when, in his view, the plaintiff was unable to work and for how long. Unless the plaintiff was incapable of working for a period of at least 12 months, any such incapacity would not have been disabling. *See, e.g., Maddocks v. Astrue,* No. 1:11-cv-461-NT, 2012 WL 5255197, at *4 (D. Me. Sept. 30, 2012) (rec. dec., *aff'd* Oct. 23, 2012) ("[A] claimant must show both that his or her impairment has lasted (or is expected to last) for twelve months and, ultimately (for purpose[s] of being found disabled and hence entitled to benefits), that it is severe enough to prevent him or her from engaging in substantial gainful activity for at least twelve months.") (citation and internal quotation marks omitted).

Moreover, as the commissioner points out, *see* Opposition at 6, even assuming *arguendo* that the plaintiff was not able to work for a period of at least 12 months, a claimant cannot be found disabled if he or she fails to follow prescribed treatment that would have restored his or her ability to work, *see, e.g., Murwin v. Astrue*, No. 1:11-cv-376-DBH, 2012 WL 2923535, at *3 n.4 (D. Me. June 30, 2012) (rec. dec., *aff'd* July 18, 2012) ("Social Security regulations provide that benefits will not be awarded to a claimant who fails to follow a prescribed treatment if that treatment can restore the claimant's ability to work.") (citing 20 C.F.R. §§ 404.1530(a), 416.930(a)); *Belanger v. Apfel*, 113 F. Supp.2d 191, 196 (D. Mass. 2000) (an impairment that can be controlled by treatment is not disabling). Dr. Tingley made clear that, in his view, any work incapacity resulted from a lack of appropriate treatment, due in part to the plaintiff's failure to attend some of his appointments. *See* Record at 106-09.[2]

---

[2] At oral argument, the plaintiff's counsel contended that his client had explained that there was a period of time that he had no insurance or money to cover treatment. However, he did not provide a record citation for that proposition.

Finally, even setting aside the Tingley testimony, the administrative law judge's RFC finding is otherwise supported by substantial evidence, for the reasons discussed below.

## B. Lester and Stahl RFC Opinions

The plaintiff next challenges the administrative law judge reliance on the Lester and Stahl RFC opinions on the basis that they are unsupported by the facts, including the plaintiff's school history, his attempts to work through the Bureau of Vocational Rehabilitation Services ("BVRS"), the BVRS's assessment, and the opinions of examining specialists (Houghton, Dr. Quinn, and Dr. Zimmerman), the plaintiff's counselor (Madore), and Dr. Tingley. *See* Statement of Errors at 11.

The plaintiff points out that:

1. Houghton found, based on testing, clinical evaluation, and input from the plaintiff's teachers, that he exhibited severe behavioral extremes of anger, rage, and inappropriate conduct with peers and teachers and difficulty processing both oral and written information and interpreting social cues. *See id*.

2. Madore described the plaintiff's processing as "very different from most people['s,]" noting that, if he became bored at work, he would simply walk off the job, considering it "stupid or dishonest" to approach his boss for work and wait to be given something to do. *See id*. at 11-12 (quoting Record at 512).

3. Drs. Quinn and Zimmerman agreed that the plaintiff had major difficulties in interacting with others, particularly those in a position of authority, and would be expected to have difficulties interacting with others and handling normal stressors. *See id*. at 12.

4. An evaluation performed by the BVRS reaches the same conclusion. *See id*.

7

5. Dr. Tingley agreed that the limitations identified by Drs. Quinn and Zimmerman have interfered with the plaintiff's ability to maintain a job and that he is only "close" to being able to obtain and sustain a job. *See id.* (quoting Record at 107-08).

However, the commissioner persuasively rejoins that:

1. Houghton completed her evaluation on May 12, 2003, when the plaintiff was a 15-year-old high school student, more than seven years prior to his alleged onset date of disability. *See* Opposition at 7-8; Record at 312. Although Houghton delineated areas of difficulty for the plaintiff and suggested ways in which to remediate them in the school context, she did not offer an opinion as to his functional capabilities in a work setting. *See* Opposition at 8; Record at 312-17. Indeed, as counsel for the commissioner noted at oral argument, to the extent that Houghton addressed the subject of possible future work for the plaintiff, she indicated that his "strong visual spatial skills should be the focus of career planning." Record at 316. The Houghton evaluation, hence, does not undercut the Lester and Stahl RFC opinions.

2. With respect to Madore, the plaintiff cites a September 25, 2007, treatment note, which predates the plaintiff's alleged date of onset of disability by several years. *See* Opposition at 8; Record at 512. While, in that note, Madore recounted an instance of irrational thought processing that he indicated was causing the plaintiff difficulty keeping a job, he did not purport to offer an opinion as to the plaintiff's work-related functional capabilities. *See id.* Moreover, Dr. Lester indicated that he reviewed Madore's then-available treatment notes. *See* Opposition at 8; Record at 546.

3. Drs. Lester and Stahl both had the benefit of review of the Zimmerman and Quinn reports, *see* Record at 129, 546, and their RFC opinions reflect limitations in attention, handling stress, and interacting with others, as found by Drs. Zimmerman and Quinn, *compare id.* at 130-

8

31 (Stahl mental RFC opinion), 548-50 (Lester mental RFC opinion) *with id*. at 533 (Quinn statement), 556 (Zimmerman statement). While Dr. Zimmerman did state that the plaintiff's major problem area was his ability to get along with others, particularly those in a position of authority, he added, "With appropriate training and particularly motivation, the [plaintiff] would be expected to make improvements in this area[.]" *Id*. at 556. According to Dr. Tingley, that proved to be the case. *See id*. at 108-09. Moreover, although Drs. Zimmerman and Quinn discuss the plaintiff's work capabilities, they both employ qualifiers such as "may" and "likely" and do not always translate actual or expected difficulties into specific limitations. *See id*. at 533, 556. In those respects, their statements are not RFC opinions as defined in 20 C.F.R. § 404.1545(c), 416.945(c) ("When we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work on a regular and continuing basis.").

  4. With respect to the BVRS materials, the plaintiff cites what appears to be a vocational intake evaluation performed at the commencement of that agency's services to the plaintiff on June 2, 2005. *See* Opposition at 9; Record at 452-56. To the extent that its contents could be considered inconsistent with the Lester and Stahl opinions, its relevance is attenuated by the fact that it predated the plaintiff's alleged onset date of disability by more than five years and reflected his capabilities prior to his receipt of services from that agency. *See id*.

  5. Dr. Tingley endorsed Dr. Lester's RFC opinion. *See* Record at 102. While he agreed that the plaintiff had demonstrated some of the difficulties cited by Drs. Zimmerman and Quinn, *see id*. at 104-07, he noted that the plaintiff's conflict with supervisors at his busboy job resulted from a supervisory situation that was not typical of work environments, *see id*. at 102-03,

and that his capacity to get along with others, including supervisors, had improved with treatment, *see id*. at 106-07.

For these reasons, the evidence cited by the plaintiff does not undermine the administrative law judge's reliance on the Stahl and Lester opinions as substantial evidence of the plaintiff's mental RFC.

### C. Madore, Houghton, Quinn, and Zimmerman Opinions

The plaintiff next faults the administrative law judge for failing to adopt an RFC consistent with the opinions of Madore, Houghton, and Drs. Quinn and Zimmerman. *See* Statement of Errors at 12-15. He contends that it is clear from their notes and reports that the plaintiff's RFC has not changed since he was 15, and that if one substitutes "work" for "home and school," it is plain from Houghton's evaluation that the plaintiff would need substantial accommodations from an employer, including strict and constant oversight and supervision. *See id*. at 12-13. He argues that:

1. Houghton offered "medical opinions" that the administrative law judge should have given the greatest weight in that they were consistent with her records, school records, Madore's assessments, and the Quinn and Zimmerman evaluations. *See id*. at 13.[3] Instead, the administrative law judge failed even to address Houghton's opinions, a "clear and material error." *Id*.

2. The BVRS materials indicate that the behaviors that the plaintiff exhibited in school continued in the workplace, frustrating that agency's efforts to assist him in obtaining and sustaining a job. *See id*. at 14.

---

[3] "Medical opinions" are defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).

10

3. The plaintiff has had six jobs, none of which have lasted more than a few months. *See id.*

4. The administrative law judge's reasons for giving only some weight to the Zimmerman and Quinn opinions – that they did not opine that the plaintiff was disabled or describe specific work-related limitations that would preclude the performance of substantial activity – do not withstand scrutiny. *See id.* One would not expect a consulting examiner to offer an opinion as to whether a claimant was disabled, which is an issue reserved to the commissioner. *See id.* Dr. Quinn did describe very specific work-related deficits, which were consistent with Dr. Zimmerman's and Houghton's evaluations and should have been given great weight. *See id.* at 14-15.

5. The Houghton, Madore, BVRS, Quinn, and Zimmerman evidence is consistent with the plaintiff's Global Assessment of Functioning, or GAF, scores, which have ranged between 40 and 55 and, when read in conjunction with the opinions, confirm serious impairments in social and occupational functioning. *See id.* at 15.[4]

Nonetheless, the commissioner again has the better argument.

As she notes, *see* Opposition at 13, the administrative law judge did take the Houghton evaluation (Exhibit B11E) into account for purposes of establishing the plaintiff's severe

---

[4] A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed., text rev. 2000) ("DSM–IV-TR"). The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning." *Id.* The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id.* at 34. A GAF score of 41 to 50 represents "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.* (boldface omitted). A GAF score of 31 to 40 reflects "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)." *Id.* (boldface omitted).

impairments, *see* Record at 17, 20. The administrative law judge cannot fairly be said to have materially erred in failing to afford the Houghton opinion great weight for purposes of determining the plaintiff's RFC; Houghton never offered an opinion as to the plaintiff's work capacities, and it is not "plain" that her school-related recommendations, made more than seven years prior to the plaintiff's alleged onset date of disability, translate into a need for "strict and constant oversight and supervision to keep [the plaintiff's] behavior appropriate in the workplace[.]" Opposition at 13 (quoting Statement of Errors at 13).

In addition, as the commissioner suggests, *see* Opposition at 14-15, the vocational evidence as a whole did not direct a conclusion that the plaintiff was incapable of sustaining work. The BVRS materials on which the plaintiff relies span the period from 2005 to 2007, prior to his alleged date of onset of disability. *See* Opposition at 14; Record at 337, 456. Even during that time period, the plaintiff indicated that he left one job because he was spending more in gas than he made in his check, and he would work if guaranteed at least 40 hours. *See* Record at 343. Subsequent to that time, the plaintiff performed a job as a busboy for a restaurant for eight months, from 2008 to 2009, *see id.* at 54-55, during which he experienced supervisory difficulties that Dr. Tingley testified would not be typical in a workplace, *see id*. at 102-03, and performed a full-time, temporary job for Wal-Mart in 2010, which ceased only because the remodeling project for which he had been hired was completed, *see id*. at 52-54.[5]

---

[5] At oral argument, in response to the commissioner's counsel's contention that the vocational evidence did not demonstrate the plaintiff's inability to sustain work or get along with others, the plaintiff's counsel cited BVRS notes indicating that the plaintiff had gotten bored and walked off a job site, *see* Record at 426 (note dated June 30, 2006), would not apply to Wal-Mart or Hannaford because he had been suspected of stealing in the past and had been asked to stay away, *see id.* at 433 (note dated March 2, 2006), and had been escorted from the school grounds following an inappropriate outburst at school, *see id*. at 435 (note dated March 8, 2006). These citations, again, reflect incidents that preceded the plaintiff's alleged onset date of disability. Subsequent to that time, the plaintiff worked at the restaurant busboy job and the Wal-Mart job.

Further, as the commissioner contends, *see* Opposition at 11-12, the administrative law judge supportably chose to give the Zimmerman and Quinn opinions some weight, to the extent that their opinions were consistent with those Drs. Lester, Stahl, and Tingley, on the bases, *inter alia*, that, while they "identified abilities, difficulties and problem areas, they did not describe particularly specific work-related limitations[,]" and "the rather general abilities, difficulties and problem areas they discussed are not inconsistent with the more specific limitations assessed by" Drs. Lester, Stahl, and Tingley, Record at 22 (citations omitted). For example, Dr. Zimmerman described the plaintiff's ability to get along with others, particularly those in a position of authority, as his "[m]ajor problem area," *id*. at 556, and Dr. Quinn stated that the plaintiff was "likely to have difficulties interacting with others[,]" "may have issues with emotional stability[,]" and "may have difficulties in social settings[,]" *id*. at 533. However, neither specified the degree to which these problems/difficulties affected the plaintiff's ability to interact at work with the public, supervisors, or co-workers. *See id*. at 533, 556. It is hardly apparent, as the plaintiff asserts, that Dr. Quinn described "marked deficits" and "very specific work-related limitations that would preclude the performance of substantial gainful activity[.]" Statement of Errors at 14-15.

To the extent that the Zimmerman and Quinn statements do conflict with Drs. Lester's and Stahl's RFC opinions, the administrative law judge supportably resolved conflicts in expert opinion, as she was tasked to do. *See, e.g., Rodriguez,* 647 F.2d at 222 ("The [commissioner] may (and, under [her] regulations, must) take medical evidence. But the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for [her], not for the doctors or for the courts.").

Finally, as the commissioner notes, *see* Opposition at 15, the administrative law judge addressed the plaintiff's GAF scores, correctly noting that such scores can be based on behaviors

13

that have little or no relationship to occupational functioning, *see* Record at 23; *see also, e.g., Robert v. Astrue*, 688 F. Supp.2d 29, 40 (D. Mass. 2010); *Pepin v. Astrue*, Civil No. 09-464-P-S, 2010 WL 3361841, at *8 (D. Me. Aug. 24, 2010) (rec. dec., *aff'd* Sept. 16, 2010) ("[A GAF] score of 49 *could* be consistent with an inability to work, but it is not *necessarily* so.") (emphasis in original), and explaining that, in her view, the plaintiff's relatively normal activities of daily living and other evidence revealed an ability to do what he chose to do.

### D. Failure To Address Houghton Opinion

The plaintiff finally contends that the administrative law judge materially erred in failing even to address the Houghton opinion, which he contends should have been given greatest, or at least substantial, weight. *See* Statement of Errors at 15-16. Even assuming *arguendo* that Houghton's evaluation can be considered a "medical opinion," any error in failing to address it in assessing the plaintiff's RFC was harmless. As discussed above, Houghton did not express an opinion on the plaintiff's work capacity. Her evaluation, completed when the plaintiff was only 15, addressed his strengths and weaknesses in the context of his school functioning.

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de novo</u> review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

14

***Failure to file a timely objection shall constitute a waiver of the right to <u>de</u> <u>novo</u> review by the district court and to appeal the district court's order.***

Dated this 25th day of June, 2014.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge